We'll move to our third case this morning, United States v. Steven Hecke. All right, Mr. Rayfield, whenever you're ready. May it please the Court, Mike Rayfield, on behalf of the appellant. The main question in this appeal is whether Mr. Hecke satisfied a burden of production, whether he made a substantial preliminary showing that Detective Compton recklessly omitted material information from his affidavits. If so, then he should receive a modest form of relief, a hearing where the District Court can hear evidence from both sides and decide whether the affidavits were lawful. In our view, Mr. Hecke went beyond what Franks requires, but I think you can resolve this appeal based on just one of the omissions at issue, which is that it is undisputed that Detective Compton omitted his informant's record and cooperation agreement with the government. During the briefing on the Franks motion, the government revealed that Brian Condor had eight convictions, including three crimes of dishonesty, and less than a week before Compton's first warrant, Condor agreed to inform on Hecke in return for a promise from the government to abandon any charges based on the raid of Condor's home. For that reason alone, this case should have the same result as this Court's decisions in Glover and Clark. But this is different than Glover and Clark, because here, reading the affidavit, it does not disclose the confidential informant's Condor's criminal history. That's clear. But when you look at it, it makes clear that they just raided a place that he had control over and got meth and ice and mushrooms and handguns, and he starts cooperating after that. So the magistrate judge signing it was clearly aware that he had engaged in criminal conduct and was cooperating after that, and the reasonable inference can be drawn he's trying to work off any possible charge or get a lesser sentence or some type of a break. Well, the magistrate judge would have been aware that he was informed, that he was giving the police information in the moment, and she may very well have assumed that Mr. Hecke was cooperating. That's a reasonable inference. Wouldn't you agree based on what's in the affidavit? I think it's a reasonable assumption that she could have made, but what she couldn't have known is that Mr. Condor had received an extremely favorable deal, that the government would abandon all charges arising out of the raid if he cooperated, and I would respectfully submit that that actually makes our case stronger than Glover and Clark, because those informants were only getting cash in return for their cooperation. They hadn't been promised, at least based on the opinions, any kind of leniency. Do you think it's material, though, that if we all agree that the magistrate judge would have been reasonable for the magistrate judge to conclude that Mr. Condor got some sort of leniency or deal for his assistance versus the magistrate judge knowing the amount of leniency he got? Is that material? I do believe it's material, although I would push back on the premise. I don't think it's a reasonable inference to suggest that the magistrate judge could have assumed that he was getting any leniency. She could have assumed that he was getting any leniency. I thought you just agreed to that, that that was a reasonable inference based on the fact that it's clear he starts talking to authorities after they've executed this search warrant and gotten meth and drugs and guns. I thought you just agreed that was a reasonable inference. I'll change my wording there. I agree with you that it's a reasonable inference. I don't think it's certainly a necessary inference. That's not the standard, though. Referring to what standard? We're looking at whether or not you've made a substantial showing to get a Franks hearing. If a court can draw a reasonable inference about the information that was provided from the cooperating individual, that works against your substantial showing. I would respectfully disagree with that because all we're talking about is whether or not Mr. Heckey should have been given a hearing. I think that it would be a fairly dangerous rule if officers didn't have to disclose the kinds of cooperation agreements that give the informants the most incentive to lie. In this case, Condor had already been promised that he would get off scot-free for any charges that he had out of the raid. Judge Lee, to answer your question more directly, I do think that the extent of the cooperation is extremely material. It's hard to imagine a more material fact than this one, that Condor, if he did what the police, if he informed on Heckey and entered into these controlled buys, he wouldn't face any charges, which is exactly what happened. We know from his trial testimony that he was never arrested arising out of the raid. Isn't it a bit of a totality test, though? We're looking at the affidavit is so detailed in what Condor said about the text messages that confirms everything, about the law enforcement's attempts, whatever they did to try to verify at least some of the facts that Condor gave them. The magistrate judge has all of this in front of the court. The magistrate judge then makes a reasonable determination that, given how specific all of this is, it seems kind of credible, credible enough for a warrant at least. I would respectfully disagree that it was specific. Condor gave Compton these text messages, which identified some purchases and some prices, but he didn't give the kinds of specifics about how, when, and where these purchases took place that would allow the officers to actually ascertain his reliability. None of what he said could actually have been disproven. But the law doesn't require that kind of specificity, especially when you have it in text, you have it in writing, and the court is looking at whether or not that's sufficient to provide probable cause to get a tracker to maybe get some of this additional information. I would agree with you from the perspective of the issuing judge, but when you're talking about the standard for a Franks hearing, the question is simply whether do we know that, for sure, that Detective Compton omitted material information. Yes, I think that's undisputed. The government doesn't dispute that these omissions would be reckless under the Franks test. It doesn't dispute that if Compton in fact omitted information about Condor's criminal history, or the other stuff we raised in our briefs about the second informant, that that would be reckless under the test. It's only contesting materiality, and I would suggest that the corroboration in the affidavits was not especially, was minimal. How can you say it's minimal when the affidavit makes clear that there are two other independent investigations, not having to do with Condor, one from the DEA and one from the ATF, where Heckey was identified as dealing drugs, being the supplier for Wallen, which links back to what Condor had said, and then corroborates information about the sale of the car, or the girlfriend trying to use the car to pay off a debt. And that's not connected to Condor. So let me, two responses to that. The threshold problem is that Condor was the only person identified who claimed that he saw Heckey committing a crime. So let's take the references to the DEA and the ATF about Heckey. Well, that's not accurate, because it says that the DEA received information that identified Heckey as Jason Wallen's narcotics supplier. Right. I was saying that there's no person identified. So the problem with those investigations is that... I'm sorry, I don't understand. They identified your client. They don't identify the source, is what I'm saying. The DEA and ATF allegedly, in Compton's words, received information about Heckey's dealings with Jason Wallen. This doesn't add very much, in my view, because we have no idea what this information was and where it came from. From all we know, it was also coming from Condor, which gets us back to his own credibility problems. And let's say it wasn't Condor. We don't have any way of assessing the credibility of that source. All we have is Compton saying, this is what I heard from the DEA and the ATF. And we have to remember, and this is where Clark becomes so critical, that Compton's own credibility is important, because of what he had left out. And I wrote down a quote from Clark here that I think is critical. To the extent that corroboration might have avoided the need for a Frank's hearing, the reliability of the corroboration all depended, from the issuing judge's point of view, on the same officer whose credibility is at issue. That's directly on point in our view. And so at the end of the day, the warrants turned, at least in very substantial part, on the credibility of Condor, who had a massive incentive to implicate Heckey, and Compton, who had submitted sworn affidavits with at least one blatant omission, and potentially as many as three. And I think actually the second informant is also important, because I think that aspect of the affidavits was almost tailor-made to mislead the issuing judge. At the beginning of the affidavits, before he mentioned Condor, Compton said that he received information that Heckey was supplying drugs in Fort Wayne. He then said that this information, quote, along with the interview of Condor, justified a warrant. The district court, in this case, understandably interpreted this to mean that there were two informants. We've quoted that, and it's at Special Appendix 12. And if the district court in this case was confused, after reading all of the affidavits and the briefs from both sides, there is every reason to believe that the state court might have similarly concluded that there were two affidavits. And I don't think the government has much of a response to this point. There is also a dispute of fact about whether Compton's allegations were aided by a warrantless GPS device. The government does have a response to this claim, but it's purely factual that Detective Heine was simply confused when he testified that the November 8, 2019 surveillance was conducted using a GPS unit. And this gets back to the most critical point in my view. That is exactly why we have Frank's hearings. The district court needed to hear testimony from Heine and Compton and Condor to decide whether these omissions and Heine's admission. That didn't come out until trial, though, and you did not renew your request for a Frank's hearing. Why haven't you waived that issue? I concede that we did not preserve it. I think the court should treat it as a forfeiture rather than a waiver. Why not treat it as a waiver when you were specifically told by the district court, if any information comes out during trial on which you want to renew your Frank's hearing, make sure you tell me and you didn't do that. And the Ninth Circuit has followed that same approach. I think that's a very fair point, Your Honor. I would just say that I think a defendant has a right to renew any arguments in support of a suppression hearing regardless of whether the district court says something like that. I think given how vigorously Mr. Heckey pursued his Frank's motion, the best interpretation— So the preservation can't be based on rigorousness. I mean, that would be a pretty hard test to apply. Okay, okay. Waiver involves the intentional decision not to do something. And it seems here, especially when the court tells you and you don't do anything, that there's a strong argument for waiver. And I'm reading the same cold record as you, Your Honor. And I think my interpretation of this—I wasn't there— is that this was an oversight in the heat of trial, not an intentional waiver. So, I mean, I think at the end of the day— I think if this is a forfeiture, it would require essentially the judge to sous-spende, convene a Frank's hearing on your argument once that passage of testimony was uttered in the courtroom, basically, or at the next recess. That's a pretty high standard. It is a high standard with respect to the GPS device. I would suggest that the court review the GPS issue alongside the other problems with the— I think it gets a little tricky because most of our motion is— most of our arguments are reviewed de novo, and that aspect of it is arguably reviewed for plain error. So I think that I would suggest that you review that issue alongside the omission of Condor's and the—what we would say is the construction of this second informant. And again, I want to just—I'll reserve a minute. But our ask is very limited, that Heckey should get a hearing. Maybe there are good explanations for all of these problems, and maybe the court will conclude that the warrant is supported by probable cause anyway, in which case the convictions can simply be reinstated. But what the court couldn't do is resolve these disputes without hearing testimony from the key individuals. I'll reserve a minute. Thank you. Thank you very much. Mr. Whalen. May it please the Court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. The district court didn't err in denying defendants' motion for a Frank's hearing to the extent any of the issues are preserved— to the extent there are issues preserved. It did not constructively and plainly amend the indictment, and there was no error in sentencing. And so we ask you affirm this conviction in sentence. I guess the place to start would be the Frank's hearings, Your Honor. The courts identified the distinction between this case and Clark and Glover, upon which defendant primarily relies, which is those are cases where the affiant represents the confidential informant to be pure snow, essentially. There's nothing on the face of the affidavit that would give any reviewing magistrate any pause when it comes to evaluating that confidential informant's information. Why wouldn't Condor's really rather extensive criminal history here make a difference? He has three prior convictions for forgery, three convictions for theft, a conviction for reckless driving, a conviction for conspiracy to distribute meth, and is expecting this very favorable deal for cooperating. Why doesn't that take this to materiality? Sure. So let me address the last point first, Your Honor, if I may. I don't know where this language about a favorable deal, where they're not going to press any charges against him if he cooperates. I don't know where that comes from. That's not in the record. The defense in its opening brief on page 19 referenced a written agreement, but as we noted and as I thought they conceded in the reply brief, the written agreement's after the affidavit's filled out. And so there's no way that he can represent anything that obviously has not happened yet. I don't think there's any evidence about what the agreement would be. He certainly is agreeing to cooperate, as any reasonable magistrate would infer, to benefit himself. But in terms of a complete absolution from charges, I don't think there's any evidence to support that, at least in the pretrial proceedings. But going back to the question Your Honor asked about the defendant's, I'm sorry, Condor's criminal history, it's important to know, first of all, we're dealing with convictions that are about 20 years old, most of them. The only one that was within the past 12 years is the federal conviction for conspiracy to distribute methamphetamines. And I think it's fairly obvious to any reviewing magistrate that this individual is engaging in drug dealing. You don't need the prior conviction to know that. In terms of the other convictions, you know, it's possible that a magistrate might want to know some of that information. They might want to know that an individual is cooperating, is engaging in deceitful conduct. We acknowledge that, and that's apparent on the face of the affidavit here. Mr. Condor, the fact that he's convicted is not on the face of the affidavit. I'm not disputing that. The fact that he's engaging in deceitful conduct is apparent on the face of the affidavit. He's engaging in these text messages, communications with Mr. Hecke, where he's trying to obfuscate what he's doing. He's using co-language. He's clearly trying to hide what's going on. This is someone who's trying to evade the law. So the fact that he's engaging in forgery, theft, things like that, a magistrate would know that this is someone who's doing their best to stay off the radar of law enforcement and to avoid detection. And those are really what those crimes are about at a certain point. And the fact that we have really extensive criminal activity that Mr. Condor is admitting to mitigates the lack of criminal history here in disclosing the affidavit. It's not just that this is a single buy. He's caught right-handed with a quarter pound of meth, cocaine, as Judge St. Eve noted, the three guns on him. But he doesn't stop there. He implicates himself. He kind of buries himself in this one. He acknowledges pounds of methamphetamine that he's bought in the past few weeks from Mr. Heckey. He acknowledges that he knows the difference between purity levels. He knows there are different prices. He knows the code language. He is neck deep in all of this drug activity, and the magistrate would understand that. And your honors have noted the detailed factual information that he gives. I guess one point to note, just in particular as it relates to the phone, the fact that Mr. Condor is showing officers texts where he shows, you know, this is me engaging in drug activity to this number, a magistrate is going to be able to issue a warrant for the recipient number for evidence of criminal activity, even if it doesn't implicate Mr. Heckey, because there's evidence on that phone of the drug deal that this particular informant submitted to. In terms of the waiver. Before you get to waiver, please, how do you respond to the argument about the second informant? Sure, and I apologize, your honor. I meant to get to that. I'm not sure that that's a reasonable reading of the affidavit, that there is an intent to mislead the district or the issuing court that there's a second affidavit. It's sloppy. We acknowledge at the district court level that it could have been better written. How I read it, the affidavit itself, is kind of a preparatory paragraph of, I've been given information from a confidential informant that Mr. Heckey is involved in drugs. Here are the steps I took. And then it comes back to the language that the information was given from the confidential informant. Ultimately, though, I don't think it matters for materiality purposes whether there is this initial informant, because the reference to them is just a single generic line of, I've been given information that Mr. Heckey is involved in drug dealing. What matters is the information the condor gives, the detailed, specific, recent information that implicates Mr. Heckey. In terms of the waiver, Your Honors, this is waiver under this court's case law on Howell and Smith and Hicks. It's not only that Chief Judge Brady said, raise any new objections on appeal. It's not only that the defendant objected, I think, about a hundred times throughout the trial. It's very impressive, actually, but that he didn't object when this comes up. He didn't object when the reference to November. What makes it waiver rather than forfeiture? What's your best argument that it's an intentional decision? So there are a couple arguments, Your Honor. The first is that this court has said so on Howell. This court has said that you can't rely on trial evidence that hasn't been brought up again to the district court. That's a waiver. So had the defendant asked the court to reconsider it at that point, had the court reconsidered it, that's going to be a different standard of review. Second is there's an intentional relinquishment when you choose to make some objections, and the record shows you didn't make other objections. So the fact that we have 90-some-odd objections at various points but not to this specific testimony shows a conscious decision not to make that objection. But how would it benefit him not to make this objection? Your Honor, I think it would benefit him because it was a not – benefit isn't quite the right word. It was a non-issue at trial, I think, because everyone understood there was confusion going on here. This doesn't affect the guilt of the defendant. And so if it had been this flaming – this smoking gun, he presumably would have brought it to Chief Judge Wadey's attention. He didn't. It's because the Franks issue wasn't in front of him at this point. He had no reason to litigate it just like the witness had no reason to have that at the forefront of their mind. But that sounds more like forfeiture to me rather than waiver. Well, I think this court would have to get under its wreath in holding a howl to find that this is forfeiture because this was trial evidence that wasn't brought to the district court's attention at the time. I guess even if this court does consider it's forfeiture, ultimately the record as a whole doesn't support the claim that there's a pre-warrant GPS attached here. It shows that Officer Hine is confused. If you look at two questions after the information that the defendant relies on here, Your Honor, I guess – gosh, I keep interrupting myself and I apologize for that. The question itself at trial page three – I'm sorry, volume three, page 86, I don't think conclusively shows as defendant wants it to show that Officer Hine testified that he was relying on the GPS. The question is specifically about whether he relied on surveillance and information about Mr. Heggie's whereabouts and the GPS, and he answers some of it. I think there's a way to read it, as defense does, that he's relying on the GPS. I think there's another way to read it, which is he's relying on information about where Mr. Heggie was, and we have multiple officers observing at the same time. But to the extent that he is saying he's relying on a GPS at that point, two questions later he's asked, and was the state warrant in effect on November 8th? The answer is yes. No one has ever argued the state warrant's in effect on November 8th. It was in effect a few days later. He's just confused about the dates, and if you look at the rest of his testimony, when he talks about what he observed on November 8th, he's talking about things that you can visually see, someone moving to and from their car, back and forth carrying things. He then delineates that between when he actually sees stuff on the GPS, because he talks about a separate trip to Michigan to be noted on the GPS. It's not plain on this record that there is a GPS tracker in place on November 8th, let alone plain enough that, as Chief Judge Sykes noted, the district court should have stopped everything and said, hold on, we've got to renew this Franks issue right now. It's front and center. I don't think that's the right standard. Unless this court has any questions on the Franks issues, given Mr. Heckey has not argued anything about the constructive amendment sentencing, I'm inclined to rest on my briefs. I'd just like to clarify one point about the sentencing, if I may. Can I ask you about the constructive amendment question? Sure, you are. Did the jury have a copy of the indictment then during deliberations? So I can't point to a specific place where the judge said, I'm giving the jury a copy of the indictment. Conversely, I can't point to a spot where the judge says, I'm not giving them a copy of the indictment. So we have a blank record, which inures against plain error. What I will say, though, is if you look at the jury instructions that the district court gave to the jury, it gave the pattern instruction that on or about a certain date means within a reasonable period of time. I think the only way that that makes sense to give to a jury is if you're giving them the indictment that alleges on or about certain dates. Otherwise, there's really no reason to instruct them about that. Wouldn't it be just based on argument of the lawyer she would instruct on that, or you just take the pattern and take the pattern? I think Chief Judge Brady was doing a pretty good job of making sure she wasn't taking the pattern just for the sake of taking the pattern. I don't think the parties were arguing on or about certain dates at any point. I don't want to represent here definitively that they never said that in their arguments, but I don't recall any instance where they were doing that. What the government was arguing, though, was a specific date. In the opening PowerPoint, the closing PowerPoint, all of its arguments, we tied count seven to January 13, 2020 when the defense got up and tried to argue different dates, the first controlled by, the second controlled by. In our second close, we came back and we said, no, no, no, we're only talking about the day of the raid. That's the day we're talking about. To the extent that there is any constructive amendment, it's not plain on this record, the defendant hasn't shown that it doesn't affect the substantive rights. I apologize, Your Honor. Just one other thing, if I may, about the actual sentencing. Mr. Heckey made the argument that the obstruction exhibits were, the government conceded at a trial that it can improve the reliability of these messages sent to Mr. Condor. I just want to clarify the record a little bit. I think, frankly, the best place to look at it is in the defense's sentencing memo, which is docket 233 at pages 11 and 12. In the government's sentencing memo, we introduced three different images. They're the two screenshots from the jail cell, the jail tablet, excuse me. That's what the district court imposed the obstruction enhancement on. There's then this fourth exhibit out there. There's a screenshot of a message that is unsourced that is referenced to Mr. Heckey, or I'm sorry, Mr. Condor, that basically says, we know you're cooperating. We're going to come get you. That is what, as defense notes in his sentencing memo, we said we couldn't authenticate at trial because we couldn't source it. We acknowledge in the trial sidebar that we could source the jail tablet messages. We just never introduced them at trial. That's a far cry from saying that we think they're unreliable. And Mr. Heckey himself in his sentencing memo said that they are his statements. He embraced that characterization. He just disputed that they were threats. So he's waived it. At best, we're at plain error, and it's not quite right. Is that standard procedure for that jail to allow inmates to have tablets that they can send texts on? I think it is becoming more and more common. I've seen a lot of text messages between inmates and individuals outside, whether or not that's wise, I don't know. I think they have to pay for them generally, pay for an hourly rate to get on the Internet and the tablets. I would hope that someone was monitoring it a little bit more closely to make sure you're not sending it to confidential informants, but I'm sure there are other First Amendment issues that I'm not thinking about there in relation to that. So unless this court has any questions on any of these issues, we would ask that you affirm Mr. Heckey's conviction and sentence. Thank you, Your Honors. Thank you. Mr. Mayfield. Thank you. So I just want to confirm where in the record we're getting the point that the agreement was that they would abandon all charges. This is from Appendix 385, 387, 448, 49, which is Compton's testimony, which says how quick did it take him, and this is an oral agreement. I agree with the government that there was no written agreement at the time. How quick did it take him to cooperate? Was it the same day? Yeah, it was the same day. Basically, if he doesn't do what he's supposed to do, charges could still be filed against him. Correct. Then you get to Condor's testimony at A, 541 to 52, where he says, were you ever taken to jail, ever arrested? He finally gets around to saying, with respect to the raid, the answer is no. So we know, A, that we have Compton's testimony that if he doesn't do what he has to do, the charges could be filed. Then we have Condor's testimony that he was never actually arrested for the raid. But is there testimony that's more specific, that he was told, if you cooperate, you're going to get a complete pass? I don't think there's testimony more specific than Compton's testimony on 385 and 387. Because it's not unusual not to arrest a confidential informant because you don't want to notify the people who he's cooperating against that he's been caught. Right. The key point is not that he was not arrested that day. It's that there hadn't been any charges pursued against him based on the cooperation. I don't think there's anything in the record where Compton or Condor says, they told me I wouldn't get anything. But I think that's the best inference from what this testimony is and what Condor said, which is that he was not, in fact, ever charged for this raid. Now, as to the second informant, I think one of the most critical points, in my view, is that it's not just our reading of the warrant that he was trying to construct a second informant. It's the district court's reading. In this case, which is at Special Appendix 12, which is in October 2019, before Detective Compton received this tip, an informant reported to Detective Compton that another individual, referring to Condor, advised the informant that he was being supplied drugs by an individual connected with the cartel. So that if the district court was confused, there's every reason to believe that the issuing judge might have confused, which I think was the intent of it. And finally, just to close with one point, you haven't heard the government say anything about Compton's own credibility, which under Glover and Clark matters a lot because it casts doubt on everything else that he said. Even setting aside the credibility of Condor, you have to view the entire affidavit with suspicion because Compton himself is omitting critical information, and you have to at least give the defendant a hearing so that we can resolve all these things that the government is saying he was confused about this. There's one interpretation of this that might be true. There's one interpretation that might be also true. So unless the court has any other questions, that's all I've got. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement, and the court will adjourn.